FILED

07/28/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0727

DA 23-0727

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 166

STATE OF MONTANA,

Plaintiff and Appellee,

v.

ALLEN MISAEL MARTINEZ,

Defendant and Appellant.

APPEAL FROM:   District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 22-149
Honorable Howard F. Recht, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Tammy A. Hinderman, Appellate Defender Division Administrator,
Justin T. Redeen, Assistant Appellate Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

Bill Fulbright, Ravalli County Attorney, Hamilton, Montana

Submitted on Briefs:  January 28, 2026

Decided:  July 28, 2026

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Defendant and Appellant Allen Misael Martinez (Martinez) appeals from the October 26, 2023 Judgment and Commitment issued by the Twenty-First Judicial District Court, Ravalli County, following his conviction for three felony counts of criminal child endangerment, one misdemeanor count of criminal mischief, and one misdemeanor count of disorderly conduct after a May 8-9, 2023 jury trial.

¶2 We address the following restated issues on appeal:

1. *Was there sufficient evidence to support Martinez's misdemeanor criminal mischief conviction?*

2. *Did the District Court err in imposing fines and fees without conducting an inquiry into Martinez's ability to pay?*

¶3 We reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On July 22, 2022, Martinez was with his wife and children at Lake Como. Martinez drank several beers and his loud and aggressive behavior attracted the attention of other beachgoers. Martinez drank more beer in the parking lot before driving away with his wife and children in the vehicle. Christina Duc and Jessica Zeigler, who had observed Martinez at Lake Como, called 911 to inform law enforcement that Martinez had been drinking and was now driving with children in the vehicle. Montana Highway Patrol Trooper Pat Heaney was patrolling on Highway 93 when he heard the report of a possible intoxicated driver from Ravalli County dispatch. Trooper Heaney came across Martinez's vehicle, which had pulled over on the side of the road, and activated his emergency lights. Martinez was outside of the vehicle and arguing with his wife, who was sitting in the passenger seat.

2

Trooper Heaney approached an extremely agitated Martinez, who had a holstered gun in his hands, and attempted to speak with him. Martinez continued to yell at both his wife and Trooper Heaney. Trooper Heaney deployed his TASER on Martinez, who pulled the barbs out of his chest and continued yelling. Backup officers arrived on scene and tackled Martinez. Once detained and placed in the back of Trooper Heaney's squad car, Martinez began spitting on the inside of the vehicle.

¶5 Martinez was charged with numerous offenses from this incident, and proceeded to a jury trial on the Amended Information which charged him with three counts of felony criminal child endangerment, one count of felony criminal endangerment, one count of misdemeanor criminal mischief, and one count of misdemeanor disorderly conduct. Relevant to this appeal, the criminal mischief charge alleged Martinez "purposely or knowingly injured, damaged, or destroyed property belonging to Montana Highway Patrol Trooper Pat Heaney without consent" by spitting throughout the patrol car. The jury heard the testimony of Duc, Ravalli County Sheriff's Office dispatcher Tamara Richardson, Zeigler, and Trooper Heaney. Trooper Heaney testified that he noticed the spit when he returned to his vehicle, cleaned the spit in the front of the vehicle up as best he could before driving Martinez to the detention center, and later spent about an hour cleaning the rear of the vehicle. During deliberations, the jury sent a question asking whether "damage" referred to "only physical" or if it could "include the environment[.]" The District Court responded that the term "damage" was "to be understood in [its] usual and ordinary usage." Martinez was convicted on all the criminal child endangerment counts, acquitted of the

3

singular criminal endangerment count, and convicted of both criminal mischief and disorderly conduct.

¶6 The District Court held a sentencing hearing on September 27, 2023. Martinez, who noted he was "not going to have any opportunity to ever get out of prison" due to a sentence he received in a separate criminal matter the week before, argued he "likely will not have the ability to earn any money" because of that sentence and asked the court "to suspend all fines, fees, public defender costs, et cetera." For each of the three criminal child endangerment counts, the District Court sentenced Martinez to five years at the Montana State Prison, with credit for time served, and imposed $500 fines, with $400 suspended, to run concurrently. For the criminal mischief charge, the court sentenced Martinez to six months at the Ravalli County Detention Center and imposed a fine of $100. The District Court noted that "[r]estitution is not an issue" with regard to the criminal mischief sentence. Finally, the court imposed a $100 fine, with $50 suspended, for the disorderly conduct count. The court also imposed a total of $475 in fees and prosecution costs. The District Court "[found] that the Defendant is able to meet the financial obligations of the sentence reasonably and without undue hardship." The written Judgment and Commitment reflecting the court's sentence was issued on October 26, 2023.

¶7 Martinez appeals. Additional facts will be discussed as necessary below.

**STANDARD OF REVIEW**

¶8 We review de novo whether sufficient evidence supports a conviction. *State v. Daniels*, 2019 MT 214, ¶ 27, 397 Mont. 204, 448 P.3d 511 (citing *State v. Polak*, 2018 MT 174, ¶ 14, 392 Mont. 90, 422 P.3d 112). "We review questions on the sufficiency of the

evidence in a criminal case to determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Polak*, ¶ 34.

¶9 "We review sentencing conditions, such as the imposition of fines and fees, first for legality and then for abuse of discretion." *State v. Geno*, 2024 MT 142, ¶ 19, 417 Mont. 135, 552 P.3d 51. "A district court's determination of a defendant's ability to pay an imposed fine, fee, cost, or other charge is 'essentially a finding of fact that this Court will reverse only if it is clearly erroneous.'" *State v. Hotchkiss*, 2020 MT 269, ¶ 13, 402 Mont. 1, 474 P.3d 1273 (quoting *State v. Reynolds*, 2017 MT 317, ¶ 16, 390 Mont. 58, 408 P.3d 503). A finding of fact is clearly erroneous if it is not supported by substantial credible evidence, if the lower court misapprehended the effect of the evidence, or if a review of the record leaves us with the definite and firm conviction that a mistake has been made. *Hotchkiss*, ¶ 13.

### DISCUSSION

¶10    *1. Was there sufficient evidence to support Martinez's misdemeanor criminal mischief conviction?*

¶11    On appeal, Martinez asserts insufficient evidence existed to support the criminal mischief conviction because the State did not present evidence his spit "injured, damaged, or destroyed" Trooper Heaney's vehicle. Martinez further contends the State did not present evidence of pecuniary loss related to cleaning up the spit. The State asserts sufficient evidence exists to support the conviction because the spit impaired the vehicle's

5

use and required cleaning and argues that there is no requirement to show a pecuniary loss to support a conviction for misdemeanor criminal mischief.

¶12    As relevant here, a person commits the offense of criminal mischief if the person purposely or knowingly "injures, damages, or destroys any property of another or public property without consent[.]"  Section 45-6-101(1)(a), MCA.[1]  There is no dispute among the parties that Martinez acted purposely and knowingly by spitting in the vehicle and that he did so without Trooper Heaney's consent.  The only element which the parties dispute is whether Martinez's spit injured or damaged Trooper Heaney's vehicle.

¶13    Neither "injure" nor "damage" are defined in the criminal mischief statute.  "Where the Legislature has not defined a statutory term, we consider the term to have its plain and ordinary meaning, and may consider dictionary definitions, prior case law, and the larger statutory scheme in which the term appears."  *State v. Christensen*, 2020 MT 237, ¶ 95, 401 Mont. 247, 472 P.3d 622 (citations omitted).  "We may also consider similar statutes from other jurisdictions and legislative history for guidance in interpreting a statute."  *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 18, 354 Mont. 15, 221 P.3d 666 (citations omitted).

¶14    The plain and ordinary meaning of "damage" is "[l]oss or injury to . . . property; esp., physical harm that is done to something[.]"  *Damage*, *Black's Law Dictionary* (12th

[1] Though the Special Concurrence faults the Court for "fail[ing] to clarify the distinctions between §§ 45-6-101(1)(a) and (1)(b), MCA," Special Concurrence, ¶ 27, the simple fact is that Martinez was not charged under subsection (1)(b) and this Court has no cause to interpret that subsection here.  We review whether sufficient evidence exists to convict Martinez of criminal mischief under the subsection with which he was actually charged.

ed. 2024). Criminal damage to property, meanwhile, is defined as the "[i]njury, destruction, or substantial impairment to the use of property (other than by fire or explosion) without the consent of a person having an interest in the property." *Criminal*, *Black's Law Dictionary* (12th ed. 2024). The dictionary definitions of damage contemplate damage causing "harm," "loss," and/or "substantial impairment." But the testimony at trial reflected none of these things. Trooper Heaney testified he cleaned up the spit in the front of his vehicle when he returned to the vehicle before driving Martinez to the detention center. The dash cam video entered into evidence at trial shows that Trooper Heaney began driving to the detention center less than a minute after returning to the vehicle. Trooper Heaney also testified he spent about an hour cleaning up the back of the vehicle after dropping Martinez off at the detention center. Trooper Heaney's vehicle was not rendered inoperable as he was able to drive off after briefly cleaning his steering wheel and dashboard. He later spent some time cleaning the back seat of his vehicle. No evidence of physical harm, loss, or substantial impairment of the vehicle was presented—it was able to be driven both nearly immediately after Trooper Heaney returned and again after a short cleaning later. Neither the value nor the usefulness of Trooper Heaney's vehicle was diminished by Martinez's spit, it merely necessitated a brief clean up.[2] While Martinez's

---

[2] The Special Concurrence agrees that Martinez's spit did not constitute "damage," as required for a conviction under § 45-6-101(1)(a), MCA, but it inaccurately perceives the Court as defining "damage" to a vehicle as rendering the vehicle "inoperable." Special Concurrence, ¶¶ 30-31. The Court's description of Trooper Heaney being able to drive his vehicle after the spitting incident does not import an inoperability requirement to the term "damage."

spit was certainly disgusting, it was not "damage" as required to support a criminal mischief conviction.[3]

¶15    Further, the State presented no evidence of a pecuniary loss in this matter. In *State v. Higgins*, 2020 MT 52, 399 Mont. 148, 458 P.3d 1036, we addressed a defendant's claim that he was entitled to a directed verdict on a felony criminal mischief charge because the State did not prove a pecuniary loss in excess of $1,500 after he damaged a pipeline during an act of civil disobedience. *Higgins*, ¶¶ 5, 18. Higgins asserted the State only presented evidence of the cost of replacing the parts he damaged, which was less than $1,000, and the inconvenience he caused to the pipeline company was a "normal cost of doing business." *Higgins*, ¶¶ 18-19. We reviewed the record and determined substantial evidence supported the district court's denial of the motion for directed verdict because, in addition to the replacement parts, there was testimony regarding the company's transition from having a normal day to responding to an emergency, which required numerous

---

[3] The Special Concurrence is correct to note that we should read the statute to give effect to each subsection and give different construction to different language. Special Concurrence, ¶ 33 (citing *State v. Schultz*, 2025 MT 142, ¶ 13, 422 Mont. 504, 571 P.3d 685). To the extent the Special Concurrence may imply we have not done so by "importing 'impairment' into" our treatment of § 45-6-101(1)(a), MCA, because that term solely "belongs in § 45-6-101(1)(b), MCA," such is not supported. The term "impairment" is not used in § 45-6-101(1)(b), MCA, nor does it appear in the definition of "tamper" found in § 45-2-101(74), MCA. Further, to the extent the Special Concurrence contends that a definition of damage including "substantial impairment" is foreclosed by the use of the term "impairment" in the felony enhancement of § 45-6-101(3), MCA, Special Concurrence, ¶ 32, the language of that subsection refers to an act of criminal mischief which "causes a substantial interruption or impairment of public communication, transportation, supply of water, gas, or power, or other public services," as being eligible for the felony enhancement. By its plain language, that enhancement applies to acts of criminal mischief which target public infrastructure and services. "The clear differentiation of language within the statute indicates a purposeful legislative decision" to apply enhanced penalties to acts of criminal mischief targeting public infrastructure and services, not to all acts of criminal mischief which cause damage to property. *Schultz*, ¶ 13.

employees to be diverted from their normal operations and to travel 75 miles to the site where Higgins had caused damage to fix that damage and inspect the pipeline. We noted both the internal billing rates and travel reimbursement rates of these employees were expenses the company would not have incurred but for the actions of Higgins and determined the district court was correct to deny the motion for directed verdict. *Higgins*, ¶ 20. We further determined the district court correctly awarded restitution by awarding the amount of employee expenses directly attributable to Higgins's conduct along with the cost of the replacement parts. *Higgins*, ¶ 22. Here, the State presented no evidence Martinez's spit caused any pecuniary loss. Unlike in *Higgins*, there was no internal billing or mileage reimbursement required for Trooper Heaney's cleaning of his squad car—he simply cleaned the front of the car before driving Martinez to the detention center and then spent a bit more time cleaning the back of the car after dropping off Martinez. No evidence was presented that the Montana Highway Patrol had to pay Trooper Heaney any more than his regular wages that day or was required to reimburse him for any costs.[4]

---

[4] We have previously noted that the "function of proof of the value of destroyed or injured property" is "not an element of the offense," but that "proof of value is to be considered by the trial judge in the exercise of his sentencing discretion." *State v. Davis*, 176 Mont. 196, 200, 577 P.2d 375, 378 (1978) (citations omitted). Accordingly, "whether a defendant is sentenced for the offense of criminal mischief as a felon or a misdemeanant, is directly contingent upon whether the value of the damage or destruction is shown to be greater or less than" the felony enhancement requires. *Davis*, 176 Mont. at 201, 577 P.2d at 378. When charging a defendant with felony criminal mischief, it is "incumbent upon the State to establish that the amount of damages caused" exceeds the statutory threshold. *Davis*, 176 Mont. at 201, 577 P.2d at 378. The distinction of whether an act of criminal mischief qualifies as a felony turns on the amount of pecuniary loss proven, but for an item of property to be "damaged" it must have some value. Put another way, the State need not prove the exact monetary "value" of the property during trial on a misdemeanor criminal mischief charge under § 45-6-101(1)(a), MCA, but it must prove that there was injury, damage, or destruction done to property—something which can only occur to property which does have value.

¶16 In addition, this interpretation of "damage" comports with "the larger statutory scheme in which the term appears." *Christensen*, ¶ 95. At sentencing, the District Court specifically noted that "[r]estitution is not an issue" with regard to Martinez's criminal mischief conviction. But that cannot be so. "A person convicted of criminal mischief *must* be ordered to make restitution in an amount and manner to be set by the court." Section 45-6-101(2), MCA (emphasis added). "Both 'shall' and 'must' are mandatory, rather than permissive." *State v. Kortan*, 2022 MT 204, ¶ 21, 410 Mont. 336, 518 P.3d 1283 (quoting *Montco v. Simonich*, 285 Mont. 280, 287, 947 P.2d 1047, 1051 (1997)). The State presented no evidence of a pecuniary loss and the District Court ordered no restitution. The statutory scheme of the crime of "criminal mischief" clearly contemplates that when a defendant "injures, damages, or destroys any property," there is an attendant pecuniary loss because, as part of sentencing, the offender must be ordered to make restitution to the property's owner. Section 45-6-101(1)(a), (2), MCA.

¶17 Both parties also cite to out-of-state cases interpreting similar statutes, which we may consider for guidance. *Giacomelli*, ¶ 18. The State asserts both *State v. Wells*, 2025 VT 5, 331 A.3d 1137, and *People v. Collins*, 288 A.D.2d 756 (N.Y. App. Div. 2001), provide support for its contention Martinez's claim related to the need for the State to demonstrate a pecuniary loss "has little merit." But both *Wells* and *Collins* specifically address the pecuniary losses suffered by the victims of those cases. *See Wells*, ¶ 9 (noting the police department "incurred $75 in extra expenses beyond normal operating costs" cleaning up a jail cell where the defendant had urinated and spat, which was sufficient to meet the Vermont statute's threshold of causing any damage to property of any value);

10

*Collins*, 288 A.D.2d at 758 (noting the testimony at trial regarding the cost to purchase and rent equipment, cost to replace a destroyed banner, and extra labor costs to complete the "prolonged and extensive" cleaning process "greatly exceeded" the charged statute's $1,500 minimum threshold). The Texas statute interpreted in *Ortiz v. State*, 280 S.W.3d 302 (Tex. Ct. App. 2008), relied on by Martinez, also required evidence of a pecuniary loss. *Ortiz*, 280 S.W.3d at 304. In *Ortiz*, the defendant was charged with misdemeanor criminal mischief for spitting on a police car. The state asserted Ortiz damaged the car by spitting on it, while the officer testified he simply wiped the spit off his window later in the day. The Texas court reviewed dictionary definitions of "damage" after noting the term was undefined by the statute, noted the officer "did not testify to any effect [the spit's] presence had on the value or usefulness of the vehicle or its window" and accordingly found "no evidence in this record that the presence of the spit on the Crown Victoria's window damaged it." *Ortiz*, 280 S.W.3d at 305. Similar to the officer in *Ortiz*, Trooper Heaney testified he simply cleaned up his car after Martinez spit on it and did not testify to any diminution in the value or usefulness of his car. The spit, while unpleasant, did not substantially impair the use of Trooper Heaney's vehicle—it was able to be driven less than a minute after Trooper Heaney returned to the car and cleaned up the front seat and returned to perfect condition after Trooper Heaney spent a little time cleaning it later that day. The State presented no evidence of a pecuniary loss as it did not need to replace anything in the car and did not present evidence MHP incurred any extra expenses beyond normal operating costs as a result of the spitting incident. At base, there is no evidence Martinez caused "damage" to Trooper Heaney's vehicle by spitting in it and there is

11

insufficient evidence to support the criminal mischief conviction.[5] *See Ortiz*, 280 S.W.3d at 305.

¶18 Reviewing the evidence in the light most favorable to the prosecution, *Polak*, ¶ 34, we cannot find that any rational trier of fact could find the essential elements of criminal mischief beyond a reasonable doubt because no evidence of "damage" resulting in a pecuniary loss was presented to the jury, and therefore insufficient evidence exists to convict Martinez of that charge. "A new trial cannot be granted where the evidence adduced at the first trial proves insufficient to support a conviction. Once a reviewing court has found the evidence legally insufficient, the proper remedy is a judgment of acquittal." *Polak*, ¶ 35 (internal citation omitted). Because the evidence was insufficient to support Martinez's criminal mischief conviction, the matter must be remanded for a judgment of acquittal on that count.

¶19 *2. Did the District Court err in imposing fines and fees without conducting an inquiry into Martinez's ability to pay?*

¶20 Martinez also asserts the District Court erred by imposing $925 in fines and fees without conducting an adequate inquiry into his ability to pay. The State contends the District Court properly relied on the PSI to consider Martinez's financial situation and did not commit clear error by imposing the fines and fees. We agree with Martinez that the

---

[5] An additional point of support comes from the disorderly conduct statute, which criminalizes, among other things, "creating a hazardous or physically offensive condition by any act that serves no legitimate purpose[.]" Section 45-8-101(1)(h), MCA. Martinez's spit certainly created a "physically offensive condition" in Trooper Heaney's car, but it did not cause "damage." If criminal mischief caused by creating a physically offensive condition, such as spitting, did not require evidence of a pecuniary loss, this section of the disorderly conduct statute would be superfluous.

District Court did not conduct an adequate inquiry into his ability to pay fines and fees and the matter must be remanded for a proper consideration of his ability to pay.

¶21 When imposing fines, fees, or other charges, a sentencing court "must first determine whether the defendant has the ability to pay[.]" *Hotchkiss*, ¶ 24. "[I]n making such determination, the sentencing judge shall take into account the financial resources of the defendant and the nature of the burden that payment of the fine will impose." *State v. McLeod*, 2002 MT 348, ¶ 35, 313 Mont. 358, 61 P.3d 126.

¶22 While the State contends the District Court properly relied on the PSI when it determined Martinez had the ability to pay the fines and fees imposed, our review of the record shows the court's conclusion is clearly erroneous. *Hotchkiss*, ¶ 13. At the sentencing hearing, the District Court asked Martinez no questions regarding his ability to pay any fines or fees. The PSI reflected that Martinez was unemployed due to his incarceration, but received a VA pension and VA disability benefits in an unspecified amount. In addition, Martinez's "Financial Assets" were listed as "$ N/A" in the PSI. Conducting no inquiry during the sentencing hearing and relying on a PSI which showed Martinez to be unemployed due to incarceration—which will continue to be the case with the State noting Martinez had received a "very long sentence" and Martinez asserting he was "not going to have any opportunity to ever get out of prison" based on his sentence in the other matter—the District Court imposed fines and fees while stating it found "that the Defendant is able to meet the financial obligations of the sentence reasonably and without undue hardship. The [c]ourt is aware that the Defendant receives monthly income sufficient to pay those costs[.]" The District Court did note it suspended "a majority of the

13

fines" it was imposing, but it is abundantly clear the court did not conduct a "serious inquiry" into Martinez's ability to pay as it was required to do. *McLeod*, ¶ 34. The PSI listed Martinez's assets as "$ N/A," noted he was unemployed and incarcerated, and gave no monetary value to the VA pension or VA disability benefits Martinez was receiving. Despite this, the District Court made a finding that Martinez "receives monthly income sufficient to pay" the fines and fees imposed and that he could reasonably pay those fines and fees without undue hardship. Rather than conducting a serious inquiry into Martinez's financial situation, the court simply determined Martinez could pay fines and fees due to having a sufficient monthly income, though the amount of Martinez's monthly income (presumably referring solely to Martinez's VA pension and VA disability benefits[6] based on the undisputed fact Martinez was unemployed due to incarceration and would remain that way for potentially the rest of his life) was not stated in the PSI, nor was it adduced by questioning during the sentencing hearing. The District Court's ability to pay finding was not based on substantial credible evidence and is clearly erroneous based on this record.

¶23    The District Court's finding of fact that Martinez had the ability to pay the fines and fees imposed in this case is clearly erroneous as it was not based on substantial credible evidence. *Hotchkiss*, ¶ 13. We therefore reverse the imposition of fines and fees and remand for a determination of whether Martinez has the ability to pay fines or fees. *Hotchkiss*, ¶ 35.

---

[6] If these were the sources of income to which the court was referring, due to Martinez's long-term incarceration, any VA disability benefits he was receiving will be substantially reduced, 38 U.S.C. § 5313(a) and 38 C.F.R. § 3.665 (2023), and any VA pension he was receiving will be discontinued entirely. 38 U.S.C. § 1505.

CONCLUSION

¶24   There is insufficient evidence to support Martinez's criminal mischief conviction because no evidence of damage resulting in a pecuniary loss was presented at trial, and we reverse with instructions to enter a judgment of acquittal on that charge.  In addition, the District Court did not properly consider Martinez's ability to pay the fines and fees imposed and we remand for a determination of whether he has the ability to pay those fines and fees.

¶25   Reversed and remanded.

/S/ INGRID GUSTAFSON

We Concur:

/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ LAURIE McKINNON

Chief Justice Cory J. Swanson, specially concurring.

¶26   I agree the conviction for criminal mischief should be reversed, but disagree with the Court's reasoning why.

¶27   The Opinion does not correctly interpret the requirements to prove an offense under § 45-6-101(1)(a), MCA, and it fails to clarify the distinctions between §§ 45-6-101(1)(a) and (1)(b), MCA.  Doing so would reveal why Martinez's argument is correct that even if the State provided sufficient evidence the defendant's conduct impaired use of the property, that conduct should have been properly charged under § 45-5-101(1)(b), MCA, instead of as the State charged the case under § 45-5-101(1)(a), MCA.

¶28 The relevant subsections describe different ways in which a person can commit the offense of criminal mischief. This occurs if the person knowingly or purposely:

(a) injures, damages, or destroys any property of another or public property without consent; [or]

(b) without consent tampers with property of another or public property so as to endanger or interfere with persons or property or its use.

Section 45-6-101(1)(a)–(b), MCA.

¶29 The Opinion notes many of these words are not defined in the statute. But "tamper" is defined as "interfere with something improperly, meddle with it, make unwarranted alterations in its existing condition, or deposit refuse upon it." Section 45-2-101(74), MCA.

¶30 The Opinion is correct the State did not prove Martinez's spit inside the patrol car injured, damaged, or destroyed that vehicle. Opinion, ¶ 14. It errs when it uses a definition of "damage" that includes "substantial impairment," then goes on to state, "Trooper Heaney's vehicle was not rendered inoperable as he was able to drive off after briefly cleaning his steering wheel and dashboard . . . . Neither the value nor the usefulness of Trooper Heaney's vehicle was diminished by Martinez's spit, it merely necessitated a clean up." Opinion, ¶ 14. This analysis is laden with error.

¶31 First, the Court's description of the damage required for this offense is beyond what the statute requires. Damage to the vehicle need not render the entire vehicle inoperable, as the Opinion suggests: "Trooper Heaney's vehicle was not rendered inoperable as he was able to drive off after briefly cleaning his steering wheel and dashboard." Opinion, ¶ 14.

16

Had there been evidence of actual damage to the back seat, that would have been sufficient for a conviction, even if the officer was able to drive the car.[1]

¶32 Second, the Court makes a legal error in utilizing "substantial impairment" as a generic definition from a legal dictionary to describe "damage" under § 45-6-101(1)(a), MCA. The term "substantial impairment" is already used elsewhere in the statute to refer to something else. Under § 45-6-101(3), MCA, a person can be sentenced as a felon if he or she "causes a *substantial* interruption or *impairment* of public communication, transportation, supply of water, gas, or power, or other public services." (Emphasis added.) It appears a person could commit the underlying offense by conduct under either §§ 45-6-101(1)(a) or (1)(b), MCA, but receive a felony sentence based upon the effect of that criminal conduct causing a "substantial impairment" of public services. The Court should not use identical language defining a felony in one portion of the statute to describe misdemeanor conduct elsewhere in the same statute.

¶33 Third, the Opinion's description of "damage" somewhat conflates the requirements of §§ 45-6-101(1)(a) and (1)(b), MCA. Opinion, ¶ 14. Martinez correctly argues we should not import impairment of property from § 45-6-101(1)(b), MCA, into our analysis of § 45-6-101(1)(a), MCA. Instead, we should read each subsection of the statute and give effect to each of them and give different construction to different language from each

---

[1] A rational jury could have found sufficient evidence that Martinez's spit tampered with the patrol car by making unwarranted alterations in its existing condition so as to interfere with its use, because the patrol car could not transport a detainee, even temporarily. As Martinez notes, such a verdict was not possible because it could only come from a charge under § 45-6-101(1)(b), MCA, and the State charged him under § 45-6-101(1)(a), MCA.

subsection. *State v. Schultz*, 2025 MT 142, ¶ 13, 422 Mont. 504, 571 P.3d 685. Section 45-6-101(1)(a), MCA, requires injury, damage, or destruction to property. Section 45-6-101(1)(b), MCA, requires tampering with "property so as to endanger or interfere with persons or property or its use." The Court errs in importing "impairment" into its treatment of § 45-6-101(1)(a), MCA, substantial or not. Opinion ¶ 14. That description belongs in § 45-6-101(1)(b), MCA.

¶34 Fourth, the Court errs in requiring proof of pecuniary loss for a misdemeanor criminal mischief conviction. Opinion, ¶¶ 15–16. The statute does not require proof of pecuniary loss, except when required to prove a specific amount for sentencing a felony offense. The Court errs in applying our holding in *State v. Higgins*, 2020 MT 52, ¶ 22, 399 Mont. 148, 458 P.3d 1036, which correctly required proof of pecuniary loss exceeding $1,500.00 for a felony criminal mischief sentence, to a misdemeanor conviction. Pecuniary loss may constitute *evidence* for a misdemeanor offense, but there is no threshold loss level required to constitute a misdemeanor offense.

¶35 Indeed, we have considered this issue on multiple occasions. And on every occasion when we required proof of pecuniary loss, it was due to the applicable statutory requirement to prove a specific amount for a felony conviction. *See State v. Davis*, 176 Mont. 196, 200, 577 P.2d 375, 378 (1978) (proof of pecuniary loss exceeding $150 necessary for felony conviction); *State v. Allen*, 2001 MT 17, ¶¶ 10–11, 304 Mont. 129, 18 P.3d 1006 (requiring proof of pecuniary loss exceeding $500 for a felony under the 1997 statute); *In Re J.D.N.*, 2008 MT 420, ¶¶ 12–13, 347 Mont. 368, 199 P.3d 189 (requiring

18

proof of pecuniary loss exceeding $1,000 for youth court case to qualify as felony criminal mischief).

¶36 Moreover, the Opinion's incorrect emphasis upon pecuniary loss creates the false impression that proof of pecuniary loss is an element of the offense. We rejected that premise in 1978. "[P]roof of value is not an element of the offense. Rather, proof of value is to be considered by the trial judge in the exercise of his sentencing discretion." *Davis*, 176 Mont. at 200, 577 P.2d at 378. That remains true today, and is even more apparent for portions of the statute where no damage or impairment is required at all, such as § 45-6-101(1)(d), MCA, for "fail[ing] to close a gate previously unopened that the person has opened, leading in or out of any enclosed premises."

¶37 I would reverse the conviction for misdemeanor criminal mischief on the simple grounds that the State's evidence did not present any injury, damage, or destruction under § 45-6-101(1)(a), MCA. The evidence presented would have been sufficient for conviction under § 45-6-101(1)(b), MCA, but the State did not charge the crime correctly. This case is that simple.

¶38 The Opinion departs from a simple analysis to inject confusion into the statute's interpretation. It appears to require that the State must prove a vehicle was rendered entirely inoperable merely to prove a defendant damaged the back seat. It confusingly uses the term "substantial impairment" for a felony offense under § 45-6-101(3), MCA, to describe a misdemeanor level of damage under § 45-6-101(1)(a), MCA. The Opinion conflates, rather than clarifies, the distinctions between §§ 45-6-101(1)(a) and (1)(b), MCA. Finally, it defies the plain language of the statute and our consistent precedent to

19

introduce, for the first time, the requirement to prove pecuniary loss for a misdemeanor offense.

/S/ CORY J. SWANSON